**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**

IN RE: BRANDON GREGORY BECK AND MELISSA ANNE BECK

Case No. 25-51673-KMS
Chapter 13 Proceedings

**OBJECTION OF GULFCO OF MISSISSIPPI, LLC**
**TO CONFIRMATION OF PLAN**

Gulfco of Mississippi, LLC, doing business as Tower Loan of Hattiesburg ("Tower"), files this Objection to Confirmation of Chapter 13 Plan which plan was filed by the Debtor herein (Debtor shall mean joint petitioners as necessary) for the following reasons:

1. Debtor has filed a petition for bankruptcy pursuant to Chapter 13 of the United States Bankruptcy Code. The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§157 and 1334 and 11 U.S.C. §§105 and 1325. This is a core proceeding pursuant to 28 U.S.C. §157 (b)(2)(A) and (L). Tower has filed, or will file, a proof of claim in this case as a secured creditor in the amount of $4,005.95.

2. As collateral for the indebtedness, Debtor pledged to Tower certain personal property. A copy of the documentation evidencing Tower's lien(s) is attached hereto.

3. Tower objects to confirmation on the basis that the Debtor has failed to schedule payment of the replacement value of the property in which Tower has a security interest at an acceptable rate of interest over the length of the Chapter 13 plan. Tower further objects to any Motions for Valuations or Claim per Section 3.2 of the plan that purports that Tower is an unsecured creditor and to any claims of exemption for any property that is not exemptible or subject to a prior intervening creditor.

4. In the event that Debtor proposes to avoid nonpossessory, non-purchase money security interest securing Tower's claim(s) on the basis it impairs exemptions to which Debtor

would be entitled under 11 U.S.C. § 522(b), and to the extent it does not, Tower denies that all of the property is exempt and objects to Debtor's claim of exemption for that property that is not exempt pursuant to Miss. Code Ann. § 85-3-1, et seq., or other applicable law.

5. Such failure is grounds for the denial of confirmation of the plan pursuant to §1325 of the Bankruptcy Code.

6. Should Debtor not be required to pay the replacement value of the collateral, then Tower requests that Tower be allowed to file an amended proof of claim as a general unsecured creditor.

WHEREFORE PREMISES CONSIDERED, Tower requests that this Court deny confirmation of the proposed plan for the reasons set forth and grant other such relief as the Court may deem proper and just.

Dated this 28th day of November 2025.

GULFCO OF MISSISSIPPI, LLC

By: /s/ Joseph T. McDaniel
Its Attorney

## CERTIFICATE OF SERVICE

I do hereby certify that I have this day electronically filed with the Clerk of Court using the ECF system which sent notification, or mailed, via U.S. Mail, postage fully prepaid to non-ECF participants, a true and correct copy of the foregoing Objection of Tower Loan to Confirmation of Chapter 13 Plan to the following:

BrandonGregory Beck and Melissa Anne Beck
3011 Magnolia Pl
Hattiesburg, MS 39402

Office of the U.S. Trustee
USTPRegion05.AB.ECF@us.doj.gov

David Rawlings
ecfnotices@rawlings13.net
Chapter 13 Trustee

Dated this 28th day of November 2025.

By: /s/ Joseph T. McDaniel
    Its Attorney

Prepared By:

Joseph T. McDaniel
MSB#: 106499
406 Liberty Park Court
P.O. Box 320001
Flowood, MS 39232
Email: jmcdaniel@towerloan.com
Telephone: 601-992-0936
Facsimile: 601-992-5176

| Fill in this information to identify your case: | | |
|---|---|---|
| Debtor 1 | **Brandon Gregory Beck** | |
| | Full Name (First, Middle, Last) | |
| Debtor 2 | **Melissa Anne Lee** | |
| (Spouse, if filing) | Full Name (First, Middle, Last) | |
| United States Bankruptcy Court for the | **SOUTHERN DISTRICT OF MISSISSIPPI** | ☐ Check if this is an amended plan, and list below the sections of the plan that have been changed. |
| Case number: | | |
| (If known) | | |

# Chapter 13 Plan and Motions for Valuation and Lien Avoidance 12/17

**Part 1:** Notices

To Debtors: This form sets out options that may be appropriate in some cases, but the presence of an option on the form does not indicate that the option is appropriate in your circumstances or that it is permissible in your judicial district. Plans that do not comply with local rules and judicial rulings may not be confirmable. The treatment of ALL secured and priority debts must be provided for in this plan.

In the following notice to creditors, you must check each box that applies

To Creditors: **Your rights may be affected by this plan. Your claim may be reduced, modified, or eliminated.**

You should read this plan carefully and discuss it with your attorney if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.

**If you oppose the plan's treatment of your claim or any provision of this plan, you or your attorney must file an objection to confirmation on or before the objection deadline announced in Part 9 of the Notice of Chapter 13 Bankruptcy Case (Official Form 309I). The Bankruptcy Court may confirm this plan without further notice if no objection to confirmation is filed. See Bankruptcy Rule 3015.**

The plan does not allow claims. Creditors must file a proof of claim to be paid under any plan that may be confirmed.

The following matters may be of particular importance. **Debtors must check one box on each line to state whether or not the plan includes each of the following items. If an item is checked as "Not Included" or if both boxes are checked, the provision will be ineffective if set out later in the plan.**

| 1.1 | A limit on the amount of a secured claim, set out in Section 3.2, which may result in a partial payment or no payment at all to the secured creditor | ☐ Included | ☑ Not Included |
|---|---|---|---|
| 1.2 | Avoidance of a judicial lien or nonpossessory, nonpurchase-money security interest, set out in Section 3.4. | ☐ Included | ☑ Not Included |
| 1.3 | Nonstandard provisions, set out in Part 8. | ☐ Included | ☑ Not Included |

**Part 2:** Plan Payments and Length of Plan

2.1 Length of Plan.

The plan period shall be for a period of __60__ months, not to be less than 36 months or less than 60 months for above median income debtor(s). If fewer than 60 months of payments are specified, additional monthly payments will be made to the extent necessary to make the payments to creditors specified in this plan.

2.2 Debtor(s) will make payments to the trustee as follows:

Debtor shall pay __$827.00__ (☐ monthly, ☑ semi-monthly, ☐ weekly, or ☐ bi-weekly) to the chapter 13 trustee. Unless otherwise ordered by the court, an Order directing payment shall be issued to the debtor's employer at the following address:

BrightSpec
770 Harris St, Ste 104B
Charlottesville VA 22903-0000

APPENDIX D　　　　　　　　　　　　　　　　　　　Chapter 13 Plan　　　　　　　　　　　　　　　　　　　Page 1

Debtor     **Brandon Gregory Beck**                 Case number
           **Melissa Anne Lee**

Joint Debtor shall pay _____ (☐ monthly, ☐ semi-monthly, ☐ weekly, or ☐ bi-weekly) to the chapter 13 trustee. Unless otherwise ordered by the court, an Order directing payment shall be issued to the joint debtor's employer at the following address:

       _____
       _____
       _____

**2.3**     **Income tax returns/refunds.**

     *Check all that apply*
     ☑    Debtor(s) will retain any exempt income tax refunds received during the plan term.

     ☐    Debtor(s) will supply the trustee with a copy of each income tax return filed during the plan term within 14 days of filing the return and will turn over to the trustee all non-exempt income tax refunds received during the plan term.

     ☐    Debtor(s) will treat income refunds as follows: _____

**2.4 Additional payments.**
    *Check one.*
       ☑    **None.** *If "None" is checked, the rest of § 2.4 need not be completed or reproduced.*

**Part 3:**     **Treatment of Secured Claims**

**3.1**     **Mortgages. (Except mortgages to be crammed down under 11 U.S.C. § 1322(c)(2) and identified in § 3.2 herein.).**

     *Check all that apply.*
    ☐   **None.** *If "None" is checked, the rest of § 3.1 need not be completed or reproduced.*

**3.1(a)**    **Principal Residence Mortgages:** All long term secured debt which is to be maintained and cured under the plan pursuant to 11 U.S.C. §
☑          1322(b)(5) shall be scheduled below. Absent an objection by a party in interest, the plan will be amended consistent with the proof of claim filed by the mortgage creditor, subject to the start date for the continuing monthly mortgage payment proposed herein.

**1**       Mtg pmts to    **Hope FCU** _____
Beginning   **November 2025**     @    **$2,673.26**   ☐ Plan    ☑ Direct.    Includes escrow ☑ Yes ☐ No

**-NONE-**    Mtg arrears to _____ Through _____ _____

**3.1(b)** ☐    **Non-Principal Residence Mortgages:** All long term secured debt which is to be maintained and cured under the plan pursuant to 11 U.S.C. § 1322(b)(5) shall be scheduled below. Absent an objection by a party in interest, the plan will be amended consistent with the proof of claim filed by the mortgage creditor, subject to the start date for the continuing monthly mortgage payment proposed herein.

Property   **-NONE-**
        address: _____
Mtg pmts to _____
Beginning   month _____ @ _____ Plan    Direct.    Includes escrow   Yes   No

Property **-NONE-**   Mtg arrears to _____ Through _____ _____

**3.1(c)** ☐    **Mortgage claims to be paid in full over the plan term:** Absent an objection by a party in interest, the plan will be amended consistent with the proof of claim filed by the mortgage creditor.

Creditor:    **-NONE-** _____ Approx. amt. due: _____ Int. Rate*: _____
Property Address: _____
Principal Balance to be paid with interest at the rate above: _____
(as stated in Part 2 of the Mortgage Proof of Claim Attachment)
Portion of claim to be paid without interest: $ _____
(Equal to Total Debt less Principal Balance)

Special claim for taxes/insurance: $ _____ **-NONE-** /month, beginning   month . _____

                                           **Mississippi Chapter 13 Plan**                                      Page 2

| Debtor | Brandon Gregory Beck | Case number | |
|---|---|---|---|
| | Melissa Anne Lee | | |

(as stated in Part 4 of the Mortgage Proof of Claim Attachment)

\* Unless otherwise ordered by the court, the interest rate shall be the current Till rate in this District
*Insert additional claims as needed.*

**3.2    Motion for valuation of security, payment of fully secured claims, and modification of undersecured claims.** *Check one.*.

☑    **None.** *If "None" is checked, the rest of § 3.2 need not be completed or reproduced.*

**3.3    Secured claims excluded from 11 U.S.C. § 506.**

*Check one.*

☐    **None**. *If "None" is checked, the rest of § 3.3 need not be completed or reproduced.*
☑    The claims listed below were either:

(1) incurred within 910 days before the petition date and secured by a purchase money security interest in a motor vehicle acquired for the personal use of the debtor(s), or

(2) incurred within 1 year of the petition date and secured by a purchase money security interest in any other thing of value.

These claims will be paid in full under the plan with interest at the rate stated below. Unless otherwise ordered by the court, the claim amount stated on a proof of claim filed before the filing deadline under Bankruptcy Rule 3002(c) controls over any contrary amount listed below. In the absence of a contrary timely filed proof of claim, the amounts stated below are controlling.

| Name of Creditor | Collateral | Amount of claim | Interest rate* |
|---|---|---|---|
| Ally Financial, Inc | 2024 BMW X3 44247 miles Debtor drives and pays | $39,817.00 | 10.00% |
| Bridgecrest Acceptance | 2013 Mini Cooper Hard top 60000 miles | $12,788.00 | 10.00% |

\*Unless otherwise ordered by the court, the interest rate shall be the current Till rate in this District.

*Insert additional claims as needed.*

**3.4    Motion to avoid lien pursuant to 11 U.S.C. § 522.**

*Check one.*

☑    **None.** *If "None" is checked, the rest of § 3.4 need not be completed or reproduced.*

**3.5    Surrender of collateral.**

*Check one.*

☐    **None.** *If "None" is checked, the rest of § 3.5 need not be completed or reproduced.*
☑    The debtor(s) elect to surrender to each creditor listed below the collateral that secures the creditor's claim. The debtor(s) request that upon confirmation of this plan the stay under 11 U.S.C. § 362(a) be terminated as to the collateral only and that the stay under § 1301 be terminated in all respects. Any allowed unsecured claim resulting from the disposition of the collateral will be treated in Part 5 below.

| Name of Creditor | Collateral |
|---|---|
| Oak Grove Credit | Household Goods |
| Onemain | 2012 Cadillac SRX |
| Tower Loan | Household Goods |

*Insert additional claims as needed.*

| Part 4: | Treatment of Fees and Priority Claims |
|---|---|

**4.1    General**
Trustee's fees and all allowed priority claims, including domestic support obligations other than those treated in § 4.5, will be paid in full without postpetition interest.

**4.2    Trustee's fees**

Mississippi Chapter 13 Plan                                                                 Page 3

| Debtor | **Brandon Gregory Beck** | Case number | |
| --- | --- | --- | --- |
| | **Melissa Anne Lee** | | |

Trustee's fees are governed by statute and may change during the course of the case.

**4.3** **Attorney's fees.**

☑ No look fee: __**4,600.00**__

| | |
| --- | --- |
| Total attorney fee charged: | $**4,600.00** |
| Attorney fee previously paid: | $**227.00** |
| Attorney fee to be paid in plan per confirmation order: | $**4,373.00** |

☐ Hourly fee: $____. (Subject to approval of Fee Application.)

**4.4** **Priority claims other than attorney's fees and those treated in § 4.5.**

*Check one.*
☑ **None**. If "None" is checked, the rest of § 4.4 need not be completed or reproduced.

**4.5** **Domestic support obligations.**

☑ **None.** *If "None" is checked, the rest of § 4.5 need not be completed or reproduced.*

---

**Part 5:** **Treatment of Nonpriority Unsecured Claims**

**5.1** **Nonpriority unsecured claims not separately classified.**

Allowed nonpriority unsecured claims that are not separately classified will be paid, pro rata. If more than one option is checked, the option providing the largest payment will be effective. *Check all that apply.*
☑ The sum of $ **20,513.34**
☐ ____% of the total amount of these claims, an estimated payment of $____
☑ The funds remaining after disbursements have been made to all other creditors provided for in this plan.

If the estate of the debtor(s) were liquidated under chapter 7, nonpriority unsecured claims would be paid approximately $**0.00**
Regardless of the options checked above, payments on allowed nonpriority unsecured claims will be made in at least this amount.

**5.2** **Other separately classified nonpriority unsecured claims (special claimants).** *Check one*.

☑ **None.** *If "None" is checked, the rest of § 5.3 need not be completed or reproduced.*

---

**Part 6:** **Executory Contracts and Unexpired Leases**

**6.1** **The executory contracts and unexpired leases listed below are assumed and will be treated as specified. All other executory contracts and unexpired leases are rejected.** *Check one*.

☑ **None.** *If "None" is checked, the rest of § 6.1 need not be completed or reproduced.*

---

**Part 7:** **Vesting of Property of the Estate**

**7.1** **Property of the estate will vest in the debtor(s) upon entry of discharge.**

**Part 8:** **Nonstandard Plan Provisions**

**8.1** **Check "None" or List Nonstandard Plan Provisions**
☑ **None.** *If "None" is checked, the rest of Part 8 need not be completed or reproduced.*

Mississippi Chapter 13 Plan | Page 4

| Debtor | **Brandon Gregory Beck** | Case number | |
|---|---|---|---|
| | **Melissa Anne Lee** | | |

Part 9:    **Signatures:**

**9.1    Signatures of Debtor(s) and Debtor(s)' Attorney**
*The Debtor(s) and attorney for the Debtor(s), if any, must sign below. If the Debtor(s) do not have an attorney, the Debtor(s) must provide their complete address and telephone number.*

| X | **/s/ Brandon Gregory Beck** | | X | **/s/ Melissa Anne Lee** |
|---|---|---|---|---|
| | **Brandon Gregory Beck** | | | **Melissa Anne Lee** |
| | Signature of Debtor 1 | | | Signature of Debtor 2 |
| | Executed on     **November  6, 2025** | | | Executed on     **November  6, 2025** |
| | **3011 Magnolia Pl** | | | **3011 Magnolia Pl** |
| | Address | | | Address |
| | **Hattiesburg MS 39402-0000** | | | **Hattiesburg MS 39402-0000** |
| | City, State, and Zip Code | | | City, State, and Zip Code |
| | Telephone Number | | | Telephone Number |

| X | **/s/ Thomas C. Rollins, Jr.** | | Date    **November  6, 2025** |
|---|---|---|---|
| | **Thomas C. Rollins, Jr. 103469** | | |
| | Signature of Attorney for Debtor(s) | | |
| | **P.O. Box 13767** | | |
| | **Jackson, MS 39236** | | |
| | Address, City, State, and Zip Code | | |
| | **601-500-5533** | | **103469 MS** |
| | Telephone Number | | MS Bar Number |
| | **trollins@therollinsfirm.com** | | |
| | Email Address | | |

Mississippi Chapter 13 Plan                                                                                                                Page 5

# RETAIL INSTALLMENT CONTRACT SECURITY AGREEMENT AND DISCLOSURE AGREEMENT

Date of Contract: 3/14/2024

## BUYER
| | | | |
|---|---|---|---|
| LAST NAME: BECK | FIRST: BRANDON | INITIAL: G | ACCOUNT NUMBER: 16 |
| LAST NAME | FIRST | INITIAL | |

STREET ADDRESS: 308 SWEETWATER LN
CITY: HATTIESBURG    STATE: MS    ZIP: 39402

## SELLER
NAME: COWBOY MALONEY HATTIESBURG    SALESMAN: 3703
STREET ADDRESS: 4700 HARDY ST Ste J
CITY: HATTIESBURG    STATE: MS    ZIP: 39401

TT4062

## FEDERAL TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE (The cost of your credit as a yearly rate) | FINANCE CHARGE (The dollar amount the credit will cost you) | Amount Financed (The amount of credit provided to you or on your behalf) | Total of Payments (The amount you will have paid after you have made all payments as scheduled) | Total Sale Price (The total cost of your purchase on credit, including your downpayment of $ 0.00) |
|---|---|---|---|---|
| 23.99 % | $ 334.86 | $ 812.10 | $ 1,146.96 | $ 1,146.96 |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 36 | 31.86 | Monthly Beginning 04/13/2024 |

**Security:** You are giving a security interest in the goods or property being purchased.
**Prepayment:** If you pay off early, you may be entitled to a refund of part of the finance charge.
**Late Charge:** If a payment is more than 15 days late, you will be charged 4% of the payment amount or $5.00, whichever is greater.

See your contract documents for any additional information about nonpayment, default, the right to accelerate the maturity of the obligation and prepayment rebates and penalties.
*Estimate, subject to date of delivery

## ITEMIZATION OF AMOUNT FINANCED

1. Cash Price (Including sales tax) ............ $ 812.10
2. Cash Downpayment $ 0.00
   Total Downpayment $ 0.00
3. Amount Paid to Others on Your Behalf
   a. To Your Prior Account No. N/A   $ 0.00
   b. N/A   $ 0.00
   Total Paid to Others on Your Behalf $ 0.00
4. Unpaid Balance (1-2+3) ........ $ 812.10
5. Amount Financed (4) ............ $ 812.10

## DESCRIPTION OF GOODS OR SERVICES (collectively, the "GOODS")

washer

SEE ATTACHED INVOICE

## INSTALLMENT SALES CONTRACT AND SECURITY AGREEMENT

**PARTIES:** "Buyer" means all Buyers signing this contract whether one or more; "Seller" means the Seller signing this contract and any successors and assigns thereof, including without limitation any creditor that purchases this contract.

**NOTE:** For value received, pursuant to the terms and conditions hereof (including those on the additional pages of this contract), Buyer purchases the Goods described above and agrees to pay to the order of Seller or Seller's assignee, at the office of the holder of this contract, the Total of Payments according to the schedule of payments set out above. If there is more than one Buyer, then each agrees that they are jointly and severally liable for payment of the Goods described above.

**DEFAULT:** Buyer shall be in default hereunder when: (i) Buyer defaults in payment or performance of any obligation or covenant herein; or (ii) upon loss, theft, substantial damage or destruction of the Goods; or (iii) when Seller reasonably deems itself insecure. Interest shall continue to be assessed on the unpaid charges, at the disclosed contract rate. Seller shall be entitled to pre-judgement and post-judgement interest at the contract rate on any judgement awards.

**REMEDIES:** Upon default, and if required, at any time thereafter, Seller may (i) declare the entire unpaid balance immediately due and payable, at the option of the holder hereof, without notice or demand; and (ii) cause all or any part of the Goods to be seized and sold under nonjudicial foreclosure or sale, or executory or other legal process issued by any court of competent jurisdiction, with or without appraisement, at the option of the holder, to the highest bidder for cash. Buyer shall pay all costs of collection, including court costs and reasonable attorney's fees.

**CREDIT REPORTING:** We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. You agree and hereby authorize us to obtain credit reports on you, both now and at any time any portion of the debt remains owed to us. You specifically acknowledge and agree that we may disclose any default by you under this Note, along with any other relevant information, to credit reporting bureaus.

**LATE CHARGE:** Buyer shall pay Seller late payment charges equal to $5.00 or 4% of the amount delinquent on any amount that is more than 15 days past due, whichever is greater.

**TITLE:** Title to said Goods shall not pass to Buyer until the balance is fully paid. In consideration of $1.00 and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged and confessed, the undersigned (whether one or more) has granted, and by these presents does hereby grant unto Seller a purchase money security interest pursuant to Section 9-309(1) of the Revised Article 9 of the Uniform Commercial Code, in the Goods and any and all additions and accessories thereto and proceeds and products thereof to secure the payment in performance of Buyer's obligations hereunder.

**CREDITORS:** If Tower Loan of Mississippi LLC, First Tower Loan LLC, or Gulfco of Mississippi LLC, ("Tower"), P.O. Box 320001, Flowood, MS 39232, buys this contract then all disclosures are made jointly by Seller and Tower.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**REFUND FOR REPAYMENT IN FULL:** If the Total of Payments is paid in full before the final payment date, Buyer may receive a Partial Refund of the unearned finance charge based upon the Rule of 78s.

**CONVENIENCE FEE:** You agree and authorize that if you make a loan payment through the use of a telephone or electronically through the internet, and where allowed by law, a fee will be charged by a third party vendor, which may vary depending upon the amount of the payment made and will be in addition to the payment made at the time of payment.

**FINANCE CHARGE REFUND OPTION (Dealer checks one if applicable)**   [ ] 90 days   [ ] 180 days   [ ] 365 days   [✓] 730 days   [ ] 1095 days.
If one of the boxes above are checked, then the following additional terms apply: If Buyer pays the entire Amount Financed set forth above and any late fees within the number of days shown in the box checked above (the "Option Period") Seller shall refund to Buyer all finance charges paid by Buyer. During the Option Period, Buyer must timely make all scheduled payments, and failure to do so is a default under this contract. In addition to all other remedies available to Seller upon Buyer's default, if, during the Option Period, Buyer fails to make any scheduled payment within thirty (30) days after its scheduled due date, the finance charge refund option shall automatically terminate, and Seller shall have no obligation to refund any finance charges to Buyer under such option. The Option Period starts on the date the contract is signed.

Buyer shall keep the Goods free from any adverse lien, security interest, or encumbrance and in good order and repair. Buyer shall not use the Goods in violation of any law, and Buyer shall not sell or transfer the Goods without the written consent of Seller.

Said Goods will be located and situated at the residence of Buyer(s) as shown above, unless otherwise state herein ____MS____ and shall not be removed from the premises, nor in any way disposed of without the written consent of the Seller. The undersigned further covenant and agree to keep the Goods fully insured against loss by fire, theft and collision or other casualty (as applicable) loss, if any, payable to Seller as his interest may appear. Buyer shall pay promptly when due all taxes and assessments upon the Goods. Seller may inspect the Goods at any time, wherever located.

At its option, Seller may discharge taxes, liens, security interest, and other encumbrances on the Goods, may pay for the insurance coverage on the Goods and may pay for the maintenance and preservation of the Goods. Buyer shall reimburse Seller on demand for any such payments made by Seller, and Seller shall be entitled to interest on such payments at 12% per annum.

THIS DOCUMENT CONSISTS OF 3 PAGES AND CONTAINS ADDITIONAL TERMS AND CONDITIONS INCLUDING AN ARBITRATION AGREEMENT

**SEVERABILITY:** The illegality or unenforceability of any provision of this Promissory Note and Security Agreement or any instrument or agreement entered into in connection herewith including, without limitation, the Arbitration Agreement, shall not in any way affect or impair the legality or enforceability of the remaining provisions of this Promissory Note and Security Agreement, the Arbitration Agreement or any other instrument or agreement entered into in connection herewith.

**CONSENT TO RECEIVE COMMUNICATIONS:** You expressly consent and agree that we and any of our agents, third-party services, service providers or assignees (hereinafter "Lender") may call you, using an automatic telephone dialing system or otherwise, leave you a voice, prerecorded, automated or artificial voice message, or send you a text or e-mail for any purpose, including, but not limited to, 1) related to the servicing or collection of any loan that you have with us, 2) for information purposes related to your loan(s) or 3) for solicitation, advertising or purchasing of any property, goods or services (each a "Communication"). You agree that for any Communication Lender may call or text you at any telephone number provided to Lender by you or anyone associated with you or acting on your behalf including, but not limited to, phone numbers and cell phone numbers associated with your plan provided to Lender now or in the future. Further Lender may send an e-mail to any email address that you provide to us now or in the future. You agree and acknowledge that these Communications aren't unsolicited for purposes of any state or federal law and that your service provider may charge you for such Communications. Additionally, you agree that Lender may always communicate with you in any manner permissible by law, including for purposes of debt collection. You understand that your consent to receive advertisement or telemarketing emails, texts and calls is voluntary, revocable by you, and is not required as a condition of your obtaining this loan. If you do not want to receive text messages about your loan sent using an automatic telephone dialing system, you can withdraw consent by following the opt-out procedures in the text message.

**RETURNED PAYMENT FEE:** You agree and authorize that if you make a payment to Tower Loan or its affiliates, by check, draft, or electronic means which is not honored due to insufficient or uncollected funds, closed or nonexistent account or any other reason payment is denied by your financial institution, lender may assess a returned payment fee and may also assess any actual costs incurred with said transaction as allowed by state law. This fee for retail installment contracts is $15.00.

**ENTIRE AGREEMENT:** This agreement constitutes the entire agreement between the parties. No amendment, modification or waiver of any provision shall be valid unless in writing and signed by both parties.

**READ THIS ARBITRATION AGREEMENT CAREFULLY. This arbitration agreement limits your rights to use the Courts.**
By making this loan, Lender binds itself to this arbitration agreement.
The Buyer, Seller and any successors or assignees, hereinafter referred to as "The Parties".

Arbitration is a method of resolving disputes between parties without going to court. The Parties agree that if there are any disputes between them, those disputes will be resolved by arbitration. Any party may require the dispute or claim to be submitted to an arbitrator in accordance with this provision. The arbitrator's decision will be final and binding on all parties. The parties agree that the funds loaned to Buyer were transactions in interstate commerce, that this loan involves interstate commerce, and that the Federal Arbitration Act applies to this transaction. The Parties understand that under this arbitration agreement, they lose their right to a jury trial, their pretrial discovery is more limited, the dispute shall be heard and decided by someone who may not be a judge, the arbitrator is not required to state the reasons for his decision, and the right of appeal is very limited.

The Parties agree that they shall arbitrate all disputes between them on the following terms:

(1) This arbitration agreement applies to all claims and disputes between The Parties. The Arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the Arbitration Agreement, or to the arbitrability of any claim or counterclaim. This includes, but is not limited to, all claims and disputes arising out of, in connection with, or relating to:
  • The consumer credit contract Buyer is obtaining from Seller today and any other retail installment contracts with Seller;
  • Any insurance purchased in connection with this consumer credit contract or any previous retail installment sales contract;
  • Any other product or service purchased in connection with this consumer credit contract;
  • Whether the claim or dispute must be arbitrated;
  • The validity of this arbitration agreement;
  • Any negotiations or discussions between us;
  • All claims or disputes based upon Federal or State laws or regulations;
  • Class action types of claims and consolidated claims,
  • Claims or disputes involving or alleging breach of contract, fraud or misrepresentation (including fraud in the inducement), breach of fiduciary duty, breach of duty of good faith and/or fair dealing, negligence, torts, bad faith, and demands for punitive damages or attorneys fees.

(2) This arbitration provision or agreement also applies to all disputes and claims between The Parties, The Parties agents, employees, affiliated companies and the employees or agents of these affiliated companies.

(3) Arbitration shall be started by either party giving written notice to the other of his, her, or its demand for arbitration, which shall briefly state the nature of the dispute, the amount involved, and the relief sought. The other party shall have thirty (30) days from receipt of the notice to deliver an answering statement to the party requesting arbitration. No filing fee or other charge is necessary to start the arbitration.

(4) The dispute shall be heard by a single arbitrator. The arbitrator shall be selected by mutual agreement of the parties. If a party fails to deliver a timely answering statement, then the party requesting arbitration shall select a neutral, disinterested arbitrator who shall decide the matter. If an answering statement is filed and the parties cannot agree upon the arbitrator, then the provisions of the Federal Arbitration Act (9 U.S.C. §5), shall apply. Lender shall pay the arbitrator's fees and expenses for the first two days of hearings. In his decision or award, the arbitrator shall direct the parties to pay his or her fees and other costs according to the relative fault of the parties.

(5) The arbitration shall be held in Rankin County, Mississippi, unless the Borrower requests in the demand for arbitration or the answering statement, the arbitration be held in his, her, or its county of residence or principal place of business.

(6) Except as they conflict with this arbitration provision, all arbitrations under this provision shall follow the procedures set forth in the provisions of the Federal Arbitration Act, which are incorporated by reference.

(7) This arbitration provision or agreement applies even if Borrower's loan(s) have been paid in full, have been charged off or discharged in bankruptcy. This agreement is also binding upon the successors, assigns and representatives of the parties.

(8) Neither party is required to initiate arbitration proceedings for matters of $10,000 or less (inclusive of attorneys fees and costs). Seller is not required to initiate arbitration before repossessing or foreclosing upon collateral. However, and notwithstanding the foregoing, disputes arising out of or relating to foreclosure or repossession of collateral shall be arbitrated.

(9) Subject to paragraph (8), if either party files a lawsuit involving a dispute covered by this agreement, the other party can have the suit stayed and the plaintiff shall be required to arbitrate under this provision. If either party files a lawsuit for any of the matters not covered by this provision (as stated in item 8 above) and the other party files a counterclaim, then within thirty (30) days of the counterclaim, either party may demand arbitration. In such event all disputes, causes of action, and claims in both the complaint and the counterclaim shall be heard and decided by the arbitrator according to this agreement.

(10) The Parties hereby waive their right to a jury trial in all legal proceedings between them including any lawsuits, arbitrations or other hearings.

(11) The Parties agree that no class action arbitration shall be allowed by this Agreement and that arbitration proceedings between them shall not be combined or consolidated with any disputes or proceedings with other borrowers.

(12) Once the arbitrator has rendered a decision, either party may file a lawsuit or other legal proceeding to enforce the decision or to obtain a judgment granting the relief awarded by the arbitrator. Except for the foregoing, the arbitration award is not subject to judicial review.

This agreement does not affect or extend any applicable statutes of limitation

| _Billy W. Reeves Jr._ | _[signature]_ |
|---|---|
| Witness | Buyer |

| _C M E C_ | |
|---|---|
| Seller | Buyer |

A SECURITY INTEREST IN THIS DOCUMENT HAS BEEN GRANTED TO BMO HARRIS BANK N.A., AS AGENT, UNDER A SECURITY AGREEMENT.

Buyer has read and understands all of the additional terms continued on all of the pages hereof and agrees that they are part hereof as if set forth at this point.

THIS DOCUMENT CONSISTS OF 3 PAGES AND CONTAINS ADDITIONAL TERMS AND CONDITIONS INCLUDING AN ARBITRATION AGREEMENT

## ASSIGNMENT

For value received, the undersigned hereby sells, assigns, and transfers to ___TOWER LOAN___ (The Assignee herein), its successors or assigns, the above contract, all monies due or to become due, and in and to the property described herein and all rights and remedies under said contract, including the right to collect all installments due thereunder and the right (either in its own name or in dealer's name) to take all such proceedings, legal or otherwise, as Seller might have taken save for this Assignment. To induce the Assignee to purchase this contract, the Seller unconditionally guarantees and warrants to it as follows: (1) That no legal or equitable defenses exist against this contract; (2) That the Seller has fully complied with all federal, state and local laws and regulations regarding this contract, including, without limitation, any regulations of the Consumer Financial Protection Bureau and or the Federal Reserve Board on consumer credit, the Gramm Leach Bliley Act and the USA Patriot Act; (3) That all disclosures and representations made on or in this contract are true and correct as shown; (4) That this contract and the signatures shown thereon are genuine; (5) That the Buyer was fully competent and of legal age of majority under the existing laws of the state of residence of Buyer to execute this contract; (6) That the Seller had a good and merchantable fee simple title to the Goods at the time of the execution of this sale and that said contract provides a primary lien on the Goods described above as security for the unpaid balance due on the purchase price thereof which is prior and superior to any claim on the date of this contract; (7) The Goods and/or services furnished to Buyer are free from defects which Buyer can either claim against Assignee or raise as a defense to any suit by Assignee pursuant to 16 C.F.R. part 433; (8) That the note and security agreement was given in a bona fide transaction for goods furnished and/or services rendered; (9) That the credit information listed herein represents actual statements made by the Buyer of merchandise involved and that the terms listed herein are true and correct statements of the terms under which said merchandise was sold to the Buyer; (10) That the balance due on said account as shown herein is the true and correct amount due from Buyer and such amount is not now disputed by Buyer; (11) That the written instruments, if any, evidencing or securing said account receivable contain the entire contract between the undersigned and the buyer and there is no special or side arrangement for rebate, extension of payment, or other concession affecting said account; (12) That no legal action has been commenced by the undersigned to collect said account receivable.

If Buyer brings any claim or legal action against Assignee, whether by arbitration, direct suit, counterclaim, or otherwise claiming any defect, deficiency in the Goods, and/or services covered by this contract, based upon fraud or Seller's failure to comply with applicable law, Seller shall indemnify and hold Assignee harmless against any such suit, damages, attorneys fees, and expenses arising therefrom, and pay any and all costs and all attorneys fees incurred by Assignee in defending said claim.

If Assignee renews, extends, or changes due date of contract, the undersigned shall continue to be responsible on all agreements in this assignment. If any of the foregoing warranties are breached, or if any of the representations be untrue, then the undersigned will upon demand repurchase the contract from Assignee and pay it in cash in an amount equal to the entire unpaid balance on said contract with accrued interest and costs. If Assignee seeks the services of an attorney to enforce the provisions of this Assignment, including any action based upon breach of the foregoing warranties, then the Seller shall pay all costs of court and all attorneys fees incurred by Assignee.

WITNESS our signatures this the ___14th___ day of ___March___, 2024

_C M E C_
Seller

By: _Billy W. Ryals Jr_

THIS DOCUMENT CONSISTS OF 3 PAGES AND CONTAINS ADDITIONAL TERMS AND CONDITIONS INCLUDING AN ARBITRATION AGREEMENT

MS RISC 07/23                                                                                                                                          PAGE 3 OF 3 PAGES

| | | | |
|---|---|---|---|
| **Tower Loan** ACH Receipt | 59 | Printed at 6/6/2024 6:19:48 PM | |
| Receipt Only  Receipt Only  Receipt Only  Receipt Only  Receipt Only | | | |
| Sales Account. | TOWER LOAN OF HATTIESBURG<br>HATTIESBURG, MS 39402 | P O BOX 16088 | 050182 |
| | COWBOY MALONEY | 6/6/2024 | **$2,220.18* |
| | *Two Thousand Two Hundred Twenty  Dollars and Eighteen  Cents* | | |
| | Receipt Only  Receipt Only  Receipt Only  Receipt Only  Receipt Only | | |

CPO Loan S #1214059 BRANDON G BECK

06/06/2024 18:05 1 PAGE 02/02

# RETAIL INSTALLMENT CONTRACT SECURITY AGREEMENT AND DISCLOSURE AGREEMENT

Date of Contract: 6/6/2024

**BUYER**
| LAST NAME | FIRST | INITIAL | ACCOUNT NUMBER |
|---|---|---|---|
| BECK | BRANDON | G | ▮▮10 |

| LAST NAME | FIRST | INITIAL | |
|---|---|---|---|

STREET ADDRESS: 308 SWEETWATER LN
CITY: HATTIESBURG   STATE: MS   ZIP: 39402

**SELLER**
| NAME | SALESMAN |
|---|---|
| COWBOY MALONEY HATTIESBURG | 3703 |

STREET ADDRESS: 4700 HARDY ST Ste J
CITY: HATTIESBURG   STATE: MS   ZIP: 39401

TT5179

## FEDERAL TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your downpayment of $ 0.00 |
|---|---|---|---|---|
| 23.99 % | $ 915.42 | $ 2,220.18 | $ 3,135.60 | $ 3,135.60 |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 36 | 87.10 | Monthly Beginning 07/06/2024 |

**Security:** You are giving a security interest in the goods or property being purchased.
**Prepayment:** If you pay off early, you may be entitled to a refund of part of the finance charge.
**Late Charge:** If a payment is more than 15 days late, you will be charged 4% of the payment amount or $5.00, whichever is greater.

See your contract documents for any additional information about nonpayment, default, the right to accelerate the maturity of the obligation and prepayment rebates and penalties.
*Estimate, subject to date of delivery

## ITEMIZATION OF AMOUNT FINANCED

1. Cash Price (Including sales tax) $ 2,220.18
2. Cash Downpayment $ 0.00
   Total Downpayment $ 0.00
3. Amount Paid to Others on Your Behalf
   a. To Your Prior Account No. N/A $ 0.00
   b. N/A $ 0.00
   Total Paid to Others on Your Behalf $ 0.00
4. Unpaid Balance (1-2+3) $ 2,220.18
5. Amount Financed (4) $ 2,220.18

### DESCRIPTION OF GOODS OR SERVICES (collectively, the "GOODS")
REF-RANGE-DW

SEE ATTACHED INVOICE

### INSTALLMENT SALES CONTRACT AND SECURITY AGREEMENT

**PARTIES:** "Buyer" means all Buyers signing this contract whether one or more; "Seller" means the Seller signing this contract and any successors and assigns thereof, including without limitation any creditor that purchases this contract.
**NOTE:** For value received, pursuant to the terms and conditions hereof (including those on the additional pages of this contract), Buyer purchases the Goods described above and agrees to pay to the order of Seller or Seller's assignee, at the office of the holder of this contract, the Total of Payments according to the schedule of payments set out above. If there is more than one Buyer, then each agrees that they are jointly and severally liable for payment of the Goods described above.
**DEFAULT:** Buyer shall be in default hereunder when: (i) Buyer defaults in payment or performance of any obligation or covenant herein; or (ii) upon loss, theft, substantial damage or destruction of the Goods; or (iii) when Seller reasonably deems itself insecure. Interest shall continue to be assessed on the unpaid charges, at the disclosed contract rate. Seller shall be entitled to pre-judgement and post-judgement interest at the contract rate on any judgement awards.
**REMEDIES:** Upon default, and if required, at any time thereafter, Seller may (i) declare the entire unpaid balance immediately due and payable, at the option of the holder hereof, without notice or demand; and (ii) cause all or any part of the Goods to be seized and sold under nonjudicial foreclosure or sale, or executory or other legal process issued by any court of competent jurisdiction, with or without appraisement, at the option of the holder, to the highest bidder for cash. Buyer shall pay all costs of collection, including court costs and reasonable attorney's fees.
**CREDIT REPORTING:** We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. You agree and hereby authorize us to obtain credit reports on you, both now, and at any time any portion of the debt remains owed to us. You specifically acknowledge and agree that we may disclose any default by you under this Note, along with any other relevant information, to credit reporting bureaus.
**LATE CHARGE:** Buyer shall pay Seller late payment charges equal to $5.00 or 4% of the amount delinquent on any amount that is more than 15 days past due, whichever is greater.

**TITLE:** Title to said Goods shall not pass to Buyer until the balance is fully paid. In consideration of $1.00 and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged and confessed, the undersigned (whether one or more) has granted, and by these presents does hereby grant unto Seller a purchase money security interest pursuant to Section 9-309(1) of the Revised Article 9 of the Uniform Commercial Code, in the Goods and any and all additions and accessories thereto and proceeds and products thereof to secure the payment in performance of Buyer's obligations hereunder.
**CREDITORS:** If Tower Loan of Mississippi LLC, First Tower Loan LLC, or Gulfco of Mississippi LLC, ("Tower"), P.O. Box 320001, Flowood, MS 39232, buys this contract then all disclosures are made jointly by Seller and Tower.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**REFUND FOR REPAYMENT IN FULL:** If the Total of Payments is paid in full before the final payment date, Buyer may receive a Partial Refund of the unearned finance charge based upon the Rule of 78s.
**CONVENIENCE FEE:** You agree and authorize that if you make a loan payment through the use of a telephone or electronically through the internet, and where allowed by law, a fee will be charged by a third party vendor, which may vary depending upon the amount of the payment made and will be in addition to the payment made at the time of payment.

**FINANCE CHARGE REFUND OPTION (Dealer checks one if applicable)** [ ] 90 days [ ] 180 days [ ] 365 days [✓] 730 days [ ] 1095 days.
If one of the boxes above are checked, then the following additional terms apply: If Buyer pays the entire Amount Financed set forth above and any late fees within the number of days shown in the box checked above (the "Option Period") Seller shall refund to Buyer all finance charges paid by Buyer. During the Option Period, Buyer must timely make all scheduled payments, and failure to do so is a default under this contract. In addition to all other remedies available to Seller upon Buyer's default, if, during the Option Period, Buyer fails to make any scheduled payment within thirty (30) days after its scheduled due date, the finance charge refund option shall automatically terminate, and Seller shall have no obligation to refund any finance charges to Buyer under such option. The Option Period starts on the date the contract is signed.

Buyer shall keep the Goods free from any adverse lien, security interest, or encumbrance and in good order and repair. Buyer shall not use the Goods in violation of any law, and Buyer shall not sell or transfer the Goods without the written consent of Seller.

Said Goods will be located and situated at the residence of Buyer(s) as shown above, unless otherwise state herein ___MS___ and shall not be removed from the premises, nor in any way disposed of without the written consent of the Seller. The undersigned further covenant and agree to keep the Goods fully insured against loss by fire, theft and collision or other casualty (as applicable) loss, if any, payable to Seller as his interest may appear. Buyer shall pay promptly when due all taxes and assessments upon the Goods. Seller may inspect the Goods at any time, wherever located.

At its option, Seller may discharge taxes, liens, security interest, and other encumbrances on the Goods, may pay for the insurance coverage on the Goods and may pay for the maintenance and preservation of the Goods. Buyer shall reimburse Seller on demand for any such payments made by Seller, and Seller shall be entitled to interest on such payments at 12% per annum.

THIS DOCUMENT CONSISTS OF 3 PAGES AND CONTAINS ADDITIONAL TERMS AND CONDITIONS INCLUDING AN ARBITRATION AGREEMENT

**SEVERABILITY:** The illegality or unenforceability of any provision of this Promissory Note and Security Agreement or any instrument or agreement entered into in connection herewith including, without limitation, the Arbitration Agreement, shall not in any way affect or impair the legality or enforceability of the remaining provisions of this Promissory Note and Security Agreement, the Arbitration Agreement or any other instrument or agreement entered into in connection herewith.

**CONSENT TO RECEIVE COMMUNICATIONS :** You expressly consent and agree that we and any of our agents, third-party services, service providers or assignees (hereinafter "Lender") may call you, using an automatic telephone dialing system or otherwise, leave you a voice, prerecorded, automated or artificial voice message, or send you a text or e-mail for any purpose, including, but not limited to, 1) related to the servicing or collection of any loan that you have with us, 2) for information purposes related to your loan(s) or 3) for solicitation, advertising or purchasing of any property, goods or services (each a "Communication"). You agree that for any Communication Lender may call or text you at any telephone number provided to Lender by you or anyone associated with you or acting on your behalf including, but not limited to, phone numbers and cell phone numbers associated with your loan provided to Lender now or in the future. Further Lender may send an e-mail to any email address that you provide to us now or in the future. You agree and acknowledge that these Communications aren't unsolicited for purposes of any state or federal law and that your service provider may charge you for such Communications. Additionally, you agree that Lender may always communicate with you in any manner permissible by law, including for purposes of debt collection. You understand that your consent to receive advertisement or telemarketing emails, texts and calls is voluntary, revocable by you, and is not required as a condition of your obtaining this loan. If you do not want to receive text messages about your loan sent using an automatic telephone dialing system, you can withdraw consent by following the opt-out procedures in the text message.

**RETURNED PAYMENT FEE:** You agree and authorize that if you make a payment to Tower Loan or its affiliates, by check, draft, or electronic means which is not honored due to insufficient or uncollected funds, closed or nonexistent account or any other reason payment is denied by your financial institution, lender may assess a returned payment fee and may also assess any actual costs incurred with said transaction as allowed by state law. This fee for retail installment contracts is $15.00.

**ENTIRE AGREEMENT:** This agreement constitutes the entire agreement between the parties. No amendment, modification or waiver of any provision shall be valid unless in writing and signed by both parties.

**READ THIS ARBITRATION AGREEMENT CAREFULLY. This arbitration agreement limits your rights to use the Courts.**
By making this loan, Lender binds itself to this arbitration agreement.
The Buyer, Seller and any successors or assignees, hereinafter referred to as "The Parties".

Arbitration is a method of resolving disputes between parties without going to court. The Parties agree that if there are any disputes between them, those disputes will be resolved by arbitration. Any party may require the dispute or claim to be submitted to an arbitrator in accordance with this provision. The arbitrator's decision will be final and binding on all parties. The parties agree that the funds loaned to Buyer were transactions in interstate commerce, that this loan involves interstate commerce, and that the Federal Arbitration Act applies to this transaction. The Parties understand that under this arbitration agreement, they lose their right to a jury trial, their pretrial discovery is more limited, the dispute shall be heard and decided by someone who may not be a judge, the arbitrator is not required to state the reasons for his decision, and the right of appeal is very limited.

The Parties agree that they shall arbitrate all disputes between them on the following terms:
(1) This arbitration agreement applies to all claims and disputes between The Parties. The Arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the Arbitration Agreement, or to the arbitrability of any claim or counterclaim. This includes, but is not limited to, all claims and disputes arising out of, in connection with, or relating to:
  • The consumer credit contract Buyer is obtaining from Seller today and any other retail installment contracts with Seller;
  • Any insurance purchased in connection with this consumer credit contract or any previous retail installment sales contract;
  • Any other product or service purchased in connection with this consumer credit contract;
  • Whether the claim or dispute must be arbitrated;
  • The validity of this arbitration agreement;
  • Any negotiations or discussions between us;
  • All claims or disputes based upon Federal or State laws or regulations;
  • Class action types of claims and consolidated claims.
  • Claims or disputes involving or alleging breach of contract, fraud or misrepresentation (including fraud in the inducement), breach of fiduciary duty, breach of duty of good faith and/or fair dealing, negligence, torts, bad faith, and demands for punitive damages or attorneys fees.
(2) This arbitration provision or agreement also applies to all disputes and claims between The Parties, The Parties agents, employees, affiliated companies and the employees or agents of these affiliated companies.
(3) Arbitration shall be started by either party giving written notice to the other of his, her, or its demand for arbitration, which shall briefly state the nature of the dispute, the amount involved, and the relief sought. The other party shall have thirty (30) days from receipt of the notice to deliver an answering statement to the party requesting arbitration. No filing fee or other charge is necessary to start the arbitration.
(4) The dispute shall be heard by a single arbitrator. The arbitrator shall be selected by mutual agreement of the parties. If a party fails to deliver a timely answering statement, then the party requesting arbitration shall select a neutral, disinterested arbitrator who shall decide the matter. If an answering statement is filed and the parties cannot agree upon the arbitrator, then the provisions of the Federal Arbitration Act (9 U.S.C. §5), shall apply. Lender shall pay the arbitrator's fees and expenses for the first two days of hearings. In his decision or award, the arbitrator shall direct the parties to pay his or her fees and other costs according to the relative fault of the parties.
(5) The arbitration shall be held in Rankin County, Mississippi , unless the Borrower requests in the demand for arbitration or the answering statement, the arbitration be held in his, her, or its county of residence or principal place of business.
(6) Except as they conflict with this arbitration provision, all arbitrations under this provision shall follow the procedures set forth in the provisions of the Federal Arbitration Act, which are incorporated by reference.
(7) This arbitration provision or agreement applies even if Borrower's loan(s) have been paid in full, have been charged off or discharged in bankruptcy. This agreement is also binding upon the successors, assigns and representatives of the parties.
(8) Neither party is required to initiate arbitration proceedings for matters of $10,000 or less (inclusive of attorneys fees and costs). Seller is not required to initiate arbitration before repossessing or foreclosing upon collateral. However, and notwithstanding the foregoing, disputes arising out of or relating to foreclosure or repossession of collateral shall be arbitrated.
(9) Subject to paragraph (8), if either party files a lawsuit involving a dispute covered by this agreement, the other party can have the suit stayed and the plaintiff shall be required to arbitrate under this provision. If either party files a lawsuit for any of the matters not covered by this provision (as stated in item 8 above) and the other party files a counterclaim, then within thirty (30) days of the counterclaim, either party may demand arbitration. In such event all disputes, causes of action, and claims in both the complaint and the counterclaim shall be heard and decided by the arbitrator according to this agreement.
(10) The Parties hereby waive their right to a jury trial in all legal proceedings between them including any lawsuits, arbitrations or other hearings.
(11) The Parties agree that no class action arbitration shall be allowed by this Agreement and that arbitration proceedings between them shall not be combined or consolidated with any disputes or proceedings with other borrowers.
(12) Once the arbitrator has rendered a decision, either party may file a lawsuit or other legal proceeding to enforce the decision or to obtain a judgment granting the relief awarded by the arbitrator. Except for the foregoing, the arbitration award is not subject to judicial review.

This agreement does not affect or extend any applicable statutes of limitation

_____Billy W. Reynolds, Jr._____    _____[signature]_____
           Witness                              Buyer

By: ___C M E C___                         _____
           Seller                               Buyer

**A SECURITY INTEREST IN THIS DOCUMENT HAS BEEN GRANTED TO BMO HARRIS BANK N.A., AS AGENT, UNDER A SECURITY AGREEMENT.**

Buyer has read and understands all of the additional terms continued on all of the pages hereof and agrees that they are part hereof as if set forth at this point.
THIS DOCUMENT CONSISTS OF 3 PAGES AND CONTAINS ADDITIONAL TERMS AND CONDITIONS INCLUDING AN ARBITRATION AGREEMENT

## ASSIGNMENT

For value received, the undersigned hereby sells, assigns, and transfers to ___TOWER LOAN___ (The Assignee herein), its successors or assigns, the above contract, all monies due or to become due, and in and to the property described herein and all rights and remedies under said contract, including the right to collect all installments due thereunder and the right (either in its own name or in dealer's name) to take all such proceedings, legal or otherwise, as Seller might have taken save for this Assignment. To induce the Assignee to purchase this contract, the Seller unconditionally guarantees and warrants to it as follows: (1) That no legal or equitable defenses exist against this contract; (2) That the Seller has fully complied with all federal, state and local laws and regulations regarding this contract, including, without limitation, any regulations of the Consumer Financial Protection Bureau and or the Federal Reserve Board on consumer credit, the Gramm Leach Bliley Act and the USA Patriot Act; (3) That all disclosures and representations made on or in this contract are true and correct as shown; (4) That this contract and the signatures shown thereon are genuine; (5) That the Buyer was fully competent and of legal age of majority under the existing laws of the state of residence of Buyer to execute this contract; (6) That the Seller had a good and merchantable fee simple title to the Goods at the time of the execution of this sale and that said contract provides a primary lien on the Goods described above as security for the unpaid balance due on the purchase price thereof which is prior and superior to any claim on the date of this contract; (7) The Goods and/or services furnished to Buyer are free from defects which Buyer can either claim against Assignee or raise as a defense to any suit by Assignee pursuant to 16 C.F.R. part 433; (8) That the note and security agreement was given in a bona fide transaction for goods furnished and/or services rendered; (9) That the credit information listed herein represents actual statements made by the Buyer of merchandise involved and that the terms listed herein are true and correct statements of the terms under which said merchandise was sold to the Buyer; (10) That the balance due on said account as shown herein is the true and correct amount due from Buyer and such amount is not now disputed by Buyer; (11) That the written instruments, if any, evidencing or securing said account receivable contain the entire contract between the undersigned and the buyer and there is no special or side arrangement for rebate, extension of payment, or other concession affecting said account; (12) That no legal action has been commenced by the undersigned to collect said account receivable.

If Buyer brings any claim or legal action against Assignee, whether by arbitration, direct suit, counterclaim, or otherwise claiming any defect, deficiency in the Goods, and/or services covered by this contract, based upon fraud or Seller's failure to comply with applicable law, Seller shall indemnify and hold Assignee harmless against any such suit, damages, attorneys fees, and expenses arising therefrom, and pay any and all costs and all attorneys fees incurred by Assignee in defending said claim.

If Assignee renews, extends, or changes due date of contract, the undersigned shall continue to be responsible on all agreements in this assignment. If any of the foregoing warranties are breached, or if any of the representations be untrue, then the undersigned will upon demand repurchase the contract from Assignee and pay it in cash in an amount equal to the entire unpaid balance on said contract with accrued interest and costs. If Assignee seeks the services of an attorney to enforce the provisions of this Assignment, including any action based upon breach of the foregoing warranties, then the Seller shall pay all costs of court and all attorneys fees incurred by Assignee.

WITNESS our signatures this the ___6th___ day of ___June___, 2024

_C  M  E  C_
Seller

By: _Billy W. Ryals, Jr_

THIS DOCUMENT CONSISTS OF 3 PAGES AND CONTAINS ADDITIONAL TERMS AND CONDITIONS INCLUDING AN ARBITRATION AGREEMENT

MS RISC 07/23                                                                                                                        PAGE 3 OF 3 PAGES

06/06/2024 15:59 1 PAGE 07/07



## INVOICE

HATTIESBURG SALES
4700 J HARDY STREET
HATTIESBURG, MS 39401
Phone (601) 264-8955

| Invoice | TT5179 |
|---|---|
| Date | 06-06-24 |
| Store | HATT |
| Type | Delivery |
| Printed | 060624 15:02 |

**Bill to**
BRANDON BECK
3011 MAGNOLIA PLACE
HATTIESBURG, MS 39402

**Ship to**
BRANDON BECK
3011 MAGNOLIA PLACE
HATTIESBURG, MS 39402

| Warehouse | P/O Number | Delivery Date | Terms | Sold At | | Bill to Phones | Ship to Phones |
|---|---|---|---|---|---|---|---|
| HATT | | 06-07-24 | | HATT | Home | (601) 818-2558 | (601) 818-2558 |
| Salesperson | | Salesperson | | | Work | | |
| 3703 BILLY W. RYALS JR. | | | | | Cell | | |

| Item Number | Description | Brand | U/M | Order | Ship | Each Price | Extended |
|---|---|---|---|---|---|---|---|
| GDT650SYVFS | DISHWASHER | GE (Covered) | EA | 1 | 0 | 569.99 | 569.99 |
| MA5U600 | 5YR MAJOR APPL UNDER $600 Warranty | PROTE | EA | 1 | 0 | 179.99 | 179.99 |
| DEL CHG | DELIVERY | DEL | EA | 1 | 0 | 79.99 | 79.99 |
| DW60SSL | 60" DISHWASHER HOSE | PETRA | EA | 1 | 0 | 14.99 | 14.99 |
| GRF600AVFS | 30" ELEC CONVECTION RANGE | GE (Covered) | EA | 1 | 0 | 989.99 | 989.99 |
| MA5U1000 | 5YR MAJOR APPL UNDER $1000 Warranty | PROTE | EA | 1 | 0 | 209.99 | 209.99 |
| RANGE CORD | 3 PRONG RANGE CORD | EAGLE | EA | 1 | 0 | 29.99 | 29.99 |

| | | | | |
|---|---|---|---|---|
| | Finance F3007 | 2220.18 | Sales Amount | 2074.93 |
| SEE STORE FOR POLICIES | | | Sales Tax | 145.25 |
| | | | Freight | .00 |
| | | | Total | 2220.18 |

SIGNATURE: _____

CUSTOMER COPY Page 1

06/06/2024 15:59 1 PAGE 05/07

# PURCHASER STATEMENT (Dealer Use)

Dealer ID # ____________

Dealer Name ____________ Phone No. ____________ Merchandise/Service ____________

Sales Price $ ________ Down Payment $ ________ Amount Financed $ ________ Term ________ Payment $ ________

If married you have the right to apply for credit separately from or jointly with your spouse ☐ Joint Credit ☐ Individual Credit in my name only. Do not furnish information concerning your spouse unless your spouse will be contractually obligated on this account or you are relying on your spouse's income as a basis for repayment of the credit requested.

| | | | | | |
|---|---|---|---|---|---|
| Purchaser(s) ☐ Married ☐ Unmarried ☐ Separated | Last Name: Beck First: Brandon Middle Initial: G. | SS #: 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 | DL # and State: 800389320 | Date of Birth: 8/27/1980 |
| | Co-Applicants Last Name (If Applying for joint credit) First Middle Initial | SS # | DL # and State | Date of Birth |
| Home Address City State Zip: 308 Sweetwater Lane Hattiesburg MS 39402 | | How Long: 13yrs | Home Phone #: 601-818-2558 | # of Dependents: 2 |
| | | | Cell Phone # | |
| ☒ Rent ☐ Buying ☐ Own ☐ Living w/relatives | Landlord or Mortgage Holder's Name and Address (if any): Dominox Properties | Monthly Payments $ 1150 | Balance Owed $ Ø | Estimated Market Value $ |
| Previous Address City State Zip | | How Long | Banking Relationships (Check One) ☐ Checking ☐ Savings ☐ Checking/Saving | |
| ☒ Emp ☐ Unemp ☐ Self ☐ Mil | Employer's Name Address Position Mil. Pay/Grd: Shimadzu Scientific Columbia Md — 7102 Riverwood Drive | How Long: 2yrs | Employer Phone #: 410-381-1227 | Monthly Net Income $ 7383 |
| Previous Employer(s) (less than 4 years) Address Position: Beckman Coulter 250 S. Kraemer Blvd | | How Long: 8yrs | Source of Other Income | |
| Income from alimony, child support or maintenance payments need not be revealed if you choose not to rely upon such income in applying for credit. Alimony, child support or separate maintenance received under ☐ Court Order ☐ Written Agreement ☐ Oral Understanding | | | | Other Income $ |
| Co-Applicants Employer Name Address Position | | How Long | Employer Phone # | Monthly Net Income $ |
| Credit Reference and Address | Credit Reference and Address | | | Total Monthly Income $ |
| Name of Relative Not Living With You Address City State Zip: Belinda Beck 220 Rayburn Pl Hattiesburg MS | Phone #: 601-310-0538 | Have You Filed Bankruptcy Within the Last 10 Yrs.? ☒ No ☐ Yes Mo/Yr ________ | | ☒ Existing Tower Customer |
| Name of Friend Not Living With You Address City State Zip Phone #: Laura McKenzie 111 Pine Ln Hattiesburg MS 39402 601-310-4418 | | | | |

Applicant(s) authorizes Dealer to gather such information as Dealer may require containing statements in this application and agrees that the application shall remain the property of the Dealer whether credit is granted or not. Applicant hereby certifies that all statements in this application are true, correct and complete in all respects and are made for the purpose of obtaining credit. Applicant authorizes Dealer to share applicant(s) personal financial information with Tower Loan. You agree and hereby authorize Dealer and/or Tower Loan to obtain credit reports on you, both now and at any time any portion of a debt remains owed to us. Applicant(s) further understand that this is only an application and not a guarantee that credit will be granted.

[signature] 6/10/24
PURCHASER DATE CO-PURCHASER DATE

**EQUAL CREDIT OPPORTUNITY ACT**

The Federal Equal Credit Opportunity act prohibits creditors from discriminating against credit applicants on the basis of race, religion, national origin, sex, marital status or age; the that all or part of the applicant's income derives from any public assistance; or the fact that the applicant has in good faith exercised any right under the Consumer Credit Protection The federal agency which administers compliance with this law concerning this type credit is the Federal Trade Commission, Washington, D.C. 20580.

NAT-005 8/11

EMAIL: ____________

# MS. INSTALLMENT LOAN AGREEMENT AND DISCLOSURE STATEMENT

| LOAN NUMBER | BORROWER NAME | ADDRESS |
|---|---|---|
| █████19 | BRANDON G BECK | 3011 MAGNOLIA PL HATTIESBURG, MS 39402-2431 |
| | CO-BORROWER NAME | ADDRESS |
| DATE OF LOAN | | |
| 6/13/2024 | CO-BORROWER NAME | ADDRESS |

**Lender** GULFCO OF MISSISSIPPI, LLC DBA TOWER LOAN OF HATTIESBURG
P O BOX 16088, HATTIESBURG, MS, 39402

## FEDERAL TRUTH IN LENDING DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Schedule of Consecutive Monthly Payments | |
|---|---|---|---|---|---|
| | | | | Number of payments | Amount of each payment |
| 36.89% | $2251.19 | $4820.81 | $7072.00 | 26 | 272.00 |
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. | 1ST Payment Due 7/13/2024 | Last Payment Due 8/13/2026 |

### ITEMIZATION OF AMOUNT FINANCED UNDER FEDERAL LAW OF
$ 4820.81

- Amount given to you directly.........$ 3514.78
- Amount paid on your account............$ 0.00
- Amounts paid to others on your behalf (we may be retaining a portion of this amount):
- Public officials.....$ 18.00
- Insurance company:
- Credit Life..........$ 245.16
- Credit Disability...$ 325.31
- Credit Property....$ 321.75
- NAME Unemp Ins $ 275.81
- NAME Car Club $ 120.00
- NAME $ 0.00
- NAME $ 0.00
- NAME $ 0.00
- NAME $ 0.00
- NAME $ 0.00
- Closing Fee........$ 282.88
- Subtotal of above amounts....$ 5103.69
- LESS Prepaid Finance Charge...$ 282.88
- Amount Financed (TOTAL) ........$ 4820.81

**SECURITY:** You are giving a security interest in Personal Property

Collateral securing this and other loans you have with us also secures other and future indebtedness.

**LATE CHARGE:** If a payment is more than 15 days late, you will be charged the greater of $5.00 or 4% of the payment, not to exceed $50.00

**FILING FEES:** $ 18.00

**PREPAYMENT:** If you pay off early, you will not have to pay a penalty and you may be entitled to a refund of part of the finance charge.

See your Promissory Note and Security Agreement for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

**INSURANCE:** Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless you sign and agree to pay the annual cost.

| TYPE | DEC. C.L. | LVL. C.L. | PREMIUM | | SIGNATURES | | |
|---|---|---|---|---|---|---|---|
| Single Credit Life | | X | $ 245.16 | I/We want credit Life insurance: | X: [signed] BBeck | X: | X: |
| Joint Credit Life | | | $ 0.00 | We want credit Life insurance: | X: | X: | X: |
| Credit Disability | X | | $ 325.31 | I want credit disability insurance: | X: [signed] BBeck | X: | X: |

You may obtain property insurance from anyone you want, provided the insurance company is acceptable to the creditor. If you get personal property insurance from or through the creditor, you will pay $ 321.75

☒ Dual Interest
☐ Single Interest

**DISCLOSURES REQUIRED BY MISSISSIPPI LAW:**
Excluding the closing fee of $ 282.88 from the finance charge, the state finance charge is $ 1,968.31 and the state contract rate is 31.00 %

## PROMISSORY NOTE AND SECURITY AGREEMENT
### ALL INFORMATION IN THE ABOVE DISCLOSURE STATEMENT IS INCLUDED HEREIN BY REFERENCE

**PARTIES:** "Borrower" means all Borrowers signing below whether one or more; and "Lender" means the Lender named above.
**NOTE:** For value received, Borrower, jointly and severally, promises to pay to the order of Lender the "Total of Payments" (see above), in the monthly payments stated in the "Schedule of Payments" (see above) until paid in full. Any extension, renewal, renewals, or other indulgences by Lender shall not release Borrower. Borrower waives protest.
**LATE CHARGE:** Borrower shall pay Lender a late charge, the greater of $5.00 or 4% of the payment on any payment that continues unpaid for more then fifteen (15) days following its due date, but Borrower shall not pay more than $50.00 on any one scheduled payment.
**PREPAYMENT REFUND:** When Borrower prepays this loan in full, then: (i) if paid by a renewal loan from Lender within 30 days from the date of this loan, Lender shall cancel or refund all of the above finance charges, closing fee and credit insurance premiums on this loan, (ii) if paid by a renewal loan from Lender after 30 days, but before 90 days from the date of this loan, Lender shall refund the unearned finance charges computed by the actuarial method; (iii) if paid or renewed after 90 days from the date of this loan, Lender shall refund the unearned finance charges computed by the Rule of 78s based on the number of days Borrower pays early, less 20 days.
**SECURITY INTEREST:** To secure payment of this loan, Borrower grants Lender a security interest in the property described below under "Security."
**BORROWER'S DUTIES:** If Lender requests, Borrower shall maintain fire, theft, and extended coverage insurance on the security. Such insurance policies shall be payable to Lender and Borrower as Borrower's interest shall appear and shall provide Lender with at least ten (10) days written notice before cancellation. In addition, Borrower shall keep the security at Borrower's address shown above, in good repair and free from adverse liens and security agreements.
**DEFAULT:** Borrower defaults when: (i) Borrower does not pay any payment in full when due; (ii) Borrower does not fully perform any of Borrower's duties under this agreement; (iii) Borrower moves the security without first giving Lender written notice; (iv) Borrower abandons the security; (v) any of the security is lost, stolen, not maintained, destroyed, or substantially damaged; (vi) Borrower death or incompetency; (vii) Borrower defaults under another Tower Loan agreement, or (viii) Lender reasonably deems itself insecure.
**REMEDIES:** When Borrower defaults, Lender can take one or more of the following actions: (i) cancel any credit insurance and apply unearned premiums to the account; (ii)In accordance with the arbitration agreement, bring suit for or arbitrate the delinquent payments; (iii) accelerate and declare due, without notice or further demand for payment, the remaining balance (but in such event, upon receiving full payment, Lender shall rebate the unearned finance charge on the date of payment by using the method described in Prepayment Refund (above); (iv) repossess and dispose of any security as a secured party under the Mississippi Uniform Commercial Code; and/or (v) foreclose on any securing deed of trust on realty. Ten (10) days notice by regular mail to Borrower at the above address shall be reasonable notice to Borrower of any disposition of any security. Lender may hire or pay an attorney to help collect the Note or recover its collateral if Debtor does not pay or if Debtor files bankruptcy. Debtor will reimburse Lender for these costs. This includes, subject to limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees for bankruptcy proceedings (including efforts to lift, modify, or vacate any automatic stay or injunction), for defending against unsuccessful counterclaims, and appeals.
**OTHER INDEBTEDNESS:** The security agreement secures all other and future indebtedness Borrower owes to Lender. Collateral securing other loans Borrower has with Lender also secures this loan.
**GOVERNING LAW:** The construction, validity and enforcement of this loan agreement shall be governed by the laws of the State of Mississippi, without regard to the principles of conflicts of laws.
**SECURITY:** The security to which the security interest granted hereunder attaches is indicated below and is more particularly described as follows:
**VALUE:** We represent to you the value of any personal property security below is ……………………………………… $ 4,950.00
This value excludes the value of any motor vehicles, livestock, boats or mobile homes
weight set, 6th tv 60" flatscreen tv, xbox one, desktop, asus laptop, 4th tv 55" flatscreen tv, 3rd tv 55" flatscreen tv, pelaton, pushmower, desktop, 5th tv 60" flatscreen tv, ps5, 2nd tv 55" flatscreen tv

**ARBITRATION AGREEMENT:** BY SIGNING BELOW AND OBTAINING THIS LOAN, BORROWER AGREES TO THE ARBITRATION AGREEMENT ON THE ADDITIONAL PAGES OF THIS AGREEMENT. YOU SHOULD READ IT CAREFULLY BEFORE YOU SIGN BELOW. IMPORTANT PROVISIONS, INCLUDING OUR PRIVACY POLICY, ARE CONTAINED ON ADDITIONAL PAGES AND INCORPORATED HEREIN.

| [signed] BBeck | | |
|---|---|---|
| BORROWER | BORROWER | BORROWER |

A SECURITY INTEREST IN THIS DOCUMENT HAS BEEN GRANTED TO BMO HARRIS BANK N.A., AS AGENT, UNDER A SECURITY AGREEMENT.

**240196144**

File Number: 20244365777A
Date Filed: 6/20/2024 1:36:51 PM
Michael Watson
Secretary of State

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
First Tower Corp                                          601-992-0153

**B. EMAIL CONTACT AT FILER (optional)**
UCCFiles@towerloan.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**

FIRST TOWER CORP.
P O BOX 320001
FLOWOOD, MS  39232-0001

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor Name (1a or 1b)(use exact, full name; do not omit, modify or abbreviate any part of the Debtor's Name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION NAME | | | |
|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| BECK | BRANDON | G | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 3011 MAGNOLIA PL | HATTIESBURG | MS | 39402-2431 | |

**2. DEBTOR'S NAME:** Provide only one Debtor Name (2a or 2b)(use exact, full name; do not omit, modify or abbreviate any part of the Debtor's Name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION NAME | | | |
|---|---|---|---|
| GULFCO OF MISSISSIPPI, LLC | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| P O BOX 16088 | HATTIESBURG | MS | 39404 | USA |

**4. COLLATERAL:** This financing statement covers the following collateral:

weight set, 6th tv 60" flatscreen tv, xbox one, desktop, asus laptop, 4th tv 55" flatscreen tv, 3rd tv 55" flatscreen tv, pelaton, pushmower, desktop, 5th tv 60" flatscreen tv, ps5, 2nd tv 55" flatscreen tv

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:  ☐ Public-Finance Transaction  ☐ Manufactured Home Transaction  ☐ A Debtor is a Transmitting Utility
6b. Check only if applicable and check only one box:  ☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable):  ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA
████████████19

FILING OFFICE COPY - UCC FINANCING STATEMENT (Form UCC1)(Rev 08/23/11)